JOHANNAH SHELDON, Respondent, v. WILLIAM B. SHELDON et al., as Executors, etc., Appellants.

A legacy given to a creditor of the testator of more than the amount of the debt, does not operate as a payment of the debt, in the absence of any words in the will from which an intent to extinguish the debt can be inferred.

In an action for an accounting for moneys alleged to have been received in 1864 by S., defendants' testator, who died in 1880, for the use of plaintiff, the wife of S., the Statute of Limitations was pleaded as a defense. The trial court found that the money in question was received by S. upon an agreement with plaintiff that he should control and invest the same for her benefit, and when requested, account to her for the same and the increase from investments thereof, *held*, that in view of the finding, the statute was not a defense; nor was it a defense that upon the accounting by defendants as executors, after due notice for the presentation of claims, no claim was presented by the plaintiff.

But *held*, that the finding could not be sustained upon evidence simply showing the receipt of the money by S. upon an agreement to pay it to plaintiff on request; and that if the money was so received the claim would be barred by the statute.

It appeared that S. received the money, which was the proceeds of the sale of lands belonging to plaintiff. The evidence relied upon to sustain said finding consisted of statements made by S. to different persons; one to the attorney at whose office the sale was consummated, to the effect that lands standing in plaintiff's name and the avails thereof when sold belonged to her, and that he desired she should have the benefit of it at his death, if not before; the others were to the effect that his wife had money which he was using and investing for her. It

appeared that S., in 1879, executed to plaintiff a note which stated the consideration to be "cash borrowed." She made a claim thereon against the estate, and the same was paid by the executors. She made no claim for the money in question until three years after final settlement of the executors' accounts. Due notice to present claims was published, and the decree on such settlement recited that all parties appeared. Plaintiff was paid in full a legacy given her by the will. It also appeared that about the time of the sale of the land two mortgages were executed to plaintiff, one by one of the grantees upon other land, which together amounted nearly to the purchase-money so received by S., and plaintiff executed discharges of the mortgages which acknowledged payment thereof in full. *Held,* that the evidence did not sustain the finding.

(Argued February 12, 1892; decided April 12, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 23, 1890, which affirmed an interlocutory judgment in favor of plaintiff, a final judgment in her favor entered upon the report of a referee, and also an order confirming the report of said referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Theodore Bacon* for appellants. Even had the understanding and agreement existed on the 24th of November, 1864, which the court has without legal evidence found, this action, brought to a court of equity, should, nevertheless, have been defeated by the gross *laches* of the plaintiff, apart from any statute. (*Bright* v. *Legerton,* 29 Beav. 60 ; *Hodgson* v. *Bibby,* 32 id. 221 ; *Browne* v. *Cross,* 14 id. 105 ; *In re McKenna,* 13 Ir. Eq. 239 ; *Clanricarde* v. *Henning,* 30 Beav. 175 ; *Scott* v. *Haddock,* 11 Ga. 258 ; *Obee* v. *Bishop,* 1 DeG., F. & J. 137.) The Statute of Limitations is a bar to the maintenance of this suit. (Code Civ. Pro. § 410 ; *Stacy* v. *Graham,* 4 Kern. 492 ; *Bean* v. *Tonnele,* 94 N. Y. 381 ; Best on Pres. 187, 188 ; *Lake* v. *Tysen,* 2 Seld. 461 ; *In re Neilley,* 95 N. Y. 382 ; *In re Cole,* 34 Hun, 320 ; *Diefenthaler* v. *Mayor, etc.,* 111 id. 331 ; *Beach* v. *Reynolds,* 64 Barb. 519 ; *Mills* v. *Mills,* 115 N. Y. 80.)

*Arthur C. Smith* for respondent.   Plaintiff's claim is not barred by the Statute of Limitations.   (*Boughton* v. *Flint*, 74 N. Y. 476; *In re Waldron*, 28 Hun, 481; *Payne* v. *Gardner*, 29 N. Y. 167; *Downes* v. *Phœnix Bank*, 6 Hill, 297; *Purdy* v. *Sistare*, 4 T. & C. 498; *Boughton* v. *Flint*, 5 Abb. [N. C.] 215; Code Civ. Pro. § 410, subd. 2.)   The legacy given by the will of Edgar Sheldon to the plaintiff was not given, and is not to be deemed á payment of the indebtedness to his wife.   (*Clark* v. *Bogardus*, 12 Wend. 68; *Boughton* v. *Flint*, 74 N. Y. 482; *Phillips* v. *McCombs*, 53 id. 494; *Eaton* v. *Burton*, 2 Hill, 576; *Williams* v. *Crary*, 4 Wend. 449.)

O'BRIEN, J.   The plaintiff is the widow of Edgar Sheldon, defendants' testator.   She brought this action to procure an accounting by the defendants, as executors of her husband, for moneys alleged to have been received by him, in his life-time, for the plaintiff's use and under an agreement to invest the same for her benefit, and to account to her, when requested, for such moneys and all accumulations thereof.   There was an interlocutory judgment in her favor which determined the principal questions.   This was followed by a reference to take and state the account and a final judgment which determined the amount of the plaintiff's claim.   Both of these judgments and all intermediate orders are here for review upon the defendants' appeal.   It has been found by the trial court that on the 7th of November, 1864, the plaintiff was the owner in her own right of certain real estate in the state of Michigan. On that day she conveyed the land, by deed, in which her husband joined, for the consideration of $768, which was paid by the grantees in the deed to her husband.   That it was received by him upon an understanding and agreement with the plaintiff, his wife, that he should control and invest the same for her benefit, and that he should, when requested, account to her for the same, and whatever increase there might be from investment thereof.   That the husband died November 4, 1880, without ever having accounted to the plaintiff for the

money or any part thereof, and that no demand for such accounting had ever been made by the plaintiff in the lifetime of her husband.    That a short time before the commencement of this action, on the 24th of April, 1886, the plaintiff presented to the defendants, as executors of her husband, her claim arising upon these facts, and demanded payment thereof, and the defendants rejected the same and refused to refer it, under the statute providing for the determination of such claims.    The final judgment awarded to the plaintiff the principal sum received by the defendants' testator for the land, and simple interest thereon from the time it was paid to him. The defendants, besides putting in issue all the material allegations of the complaint, interposed three separate affirmative defenses, namely : The six years Statute of Limitations, a judicial settlement of the accounts of the executors, without any claim made by the plaintiff on account of this transaction, and the payment of a legacy of $7,000 to the plaintiff by them, bequeathed to her in the testator's will.    Payment generally was not pleaded as a defense.    There is no doubt as to the fact that the testator became indebted to the plaintiff in 1864 by reason of the receipt of the money which was the proceeds of her land.    At least that fact is not the subject of controversy in this court.    The only question is whether the claim existed against the husband as a valid obligation at the time of his death, and if it did, whether it was barred by the Statute of Limitations.    The legacy given to the plaintiff by the will of the husband did not operate as payment.    The will contains no words from which any intent can be inferred or found to extinguish any pre-existing debt by means of the bequest.    It was an absolute gift apart from any debt due by the testator to his wife, and no debt is even mentioned or referred to in the will.    A legacy to a creditor is not to be deemed in satisfaction of his debt, unless so intended by the testator.    (*Clarke* v. *Bogardus*, 12 Wend. 68 ; *Boughton* v. *Flint*, 74 N. Y. 482 ; *Phillips* v. *McCombs*, 53 id. 494 ; *Eaton* v. *Benton*, 2 Hill, 576 ; *Williams* v. *Crary*, 4 Wend. 449.)

In this case no such intent was found or established. This is, no doubt, what is known to the courts as a stale demand, and such demands, it is needless to say, are looked upon with some suspicion. A claim, surrounded by circumstances such as appear in this record, ought to be sustained by adequate and satisfactory proof. But the presumption against a stale claim is generally one of fact and not of law. The circumstances are evidence upon the question of the existence of the claim to be considered by the jury or the court upon a trial of the facts. (*Macaulay* v. *Palmer*, 125 N. Y. 742.)

If the finding in this case was that the husband had simply received the wife's money for her use, to be paid to her upon request, the claim would be barred by the Statute of Limitations. (*Mills* v. *Mills*, 115 N. Y. 80; Code, § 410.) But the finding contains an additional element, which is relied upon to take the case out of the statute. (*Boughton* v. *Flint*, 74 N. Y. 481.)

It was further found that the money was received by the husband " upon an understanding and agreement with the plaintiff, his wife, that he should control and invest the same for her benefit, and that he should, when requested, account to her for the said money and whatever increase there might be from investments thereof." In an action for money had and received, the plaintiff could recover upon proof of the receipt of the money, unless the defendants proved payment, or defeated the claim by pleading the Statute of Limitations. But it is obvious that the finding above referred to cannot be sustained upon such proof as would warrant a recovery for money had and received. The plaintiff must go farther and prove, not only the receipt of the money, but that it was received upon the special agreement found. The plaintiff's claim was that her husband received the money upon a trust of indefinite duration to control, manage and invest the money and account for it with all accumulations upon request, and that this trust or agency was created by express agreement between the parties. The only question that is open for consideration in this court is whether this important part of the

finding is based upon evidence. There are some undisputed facts that are entitled to considerable weight at the outset in a review of the evidence, for it must be reviewed in order to determine whether a finding, upon which the judgment is based, and which is duly excepted to, is sustained by evidence.

On the 25th of January, 1883, the executors of the husband paid to the plaintiff a claim made by her of $62.76, the amount of a note of $50, with interest, dated June 2, 1879, at Climax, Michigan, "for value received in cash borrowed." It has been held that the giving of a promissory note is *prima facie* evidence of an accounting and settlement of all demands between the parties, and that the maker was indebted to the payee upon such settlement to the amount of the note. It may be that this presumption does not apply in this case, as the consideration of the note is stated to be money borrowed, but the whole transaction connected with this note had an important bearing on the claim in question. (*Lake* v. *Tysen*, 6 N. Y. 461.)

· Up to this time the plaintiff had given no intimation of the existence of the present claim. In July, 1881, the statutory notice to present claims against the estate was published. In January, 1883, citations were issued for a final settlement of the accounts of the executors, to be had in February, and in July following a final decree settling the estate was made, which recites the appearance of all parties. The plaintiff was paid her legacy in full, but she gave no intimation of the existence of this claim till nearly three years after the final decree was made. It was shown, and is not disputed, that on November 24, 1864, one of the plaintiff's grantees of the Michigan land, executed to her a mortgage for $380, substantially one-half the purchase-money. In 1866, the plaintiff executed and acknowledged a discharge of this mortgage. On the 28th of November, 1864, one Gage executed another mortgage to the plaintiff for $300. The plaintiff signed and acknowledged a discharge of this mortgage in February, 1868. These papers, signed by the plaintiff, contained the statement that the mortgages were "paid and satisfied in full." The courts below have held substantially that all this does not prove that the

money paid to the plaintiff upon these mortgages was the same money that her husband received, or that it was paid on that account, or actually received by her. When the mortgagee signs an instrument, acknowledging payment of the mortgage, the instrument would prove, *prima facie,* that the person who executed it received the money. Though the circumstances are quite persuasive that the amount paid on these two mortgages was part of the sum received by the plaintiff's husband, yet we cannot say that the trial court was bound, as matter of law, to deduce that conclusion from the evidence. The first piece of evidence produced to prove the agreement found was that of an attorney in Michigan, who, at the age of sixty-five, testified by commission, in 1886, to remarks made and conversations had with the defendant's testator in 1864. The transaction resulting in the sale of the plaintiff's land seems to have taken place at his office, but all he could swear to, which was pertinent to the question now in hand, was that the deceased told him that all lands standing in his wife's name belonged to her. That the avails belonged to her when sold, and that he desired that she should have the benefit of it at his death, if not before. Two other witnesses examined in the same way testified generally that the deceased told them in Michigan that his wife had money, and that he was using and investing it for her. These witnesses were seventy-seven years old. One of them swore that the conversation was had with the deceased sometime before 1864, and between 1857 and 1863. It could not, therefore, relate to the money in question. The other witness who had a separate conversation did not fix its date. Another witness, who was the wife of the nephew of deceased, testified to a conversation which she heard between her husband and the deceased in Philadelphia, in 1876, to the effect that the deceased said to his nephew that he wanted to go to Saginaw to make some investments in some property, that the money of his wife had been liberated, though the amount was not stated at that time. Subsequently and in other conversations, one of which was a few months before his death, the deceased spoke of a sum of money he

had invested for his wife which had doubled, and the sum of $4,000 was mentioned. The mother of this witness also testified to conversations with him in 1876 and in 1878. She says that the deceased told her in 1876 that he had $3,000 of his wife's money to invest which was uninvested. That he had made considerable for her by investments, but that was a sum which had been returned. The conversation of 1878 was in Chicago, when the deceased was sick. She says that the deceased told her he had $3,000 of his wife's money. That he wanted to build and furnish a house for her and felt bad that it had not been done, because he feared that was his last illness. That it was money his wife gave him to invest for her. Another witness residing in Michigan, examined upon commission, testified that in 1880, he saw the deceased at a hotel in Chicago, and applied to him for a loan of $1,000. The deceased, in declining to make the loan, said that he had $1,000 loaned out which belonged to his wife which would soon be paid in.

After a careful examination, I find no other evidence in the record bearing on the question, and no other is referred to on the briefs of counsel. It all consists of admissions alleged to have been made by the deceased, a dangerous and unreliable species of evidence at best, but even if accepted in its full length and breadth, it does not prove the important fact found in this case, namely, that in 1864, an agreement was made between the plaintiff and her husband by which a special trust, duty or agency was imposed upon the husband with respect to this specific $768, and that an obligation to account under this indefinite trust existed against the husband at the time of his death. The admissions testified to do not prove this agreement and they are all consistent with its absence, as they are not necessarily connected in any way with the transaction in question.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.