## VAN SLOOTEN v. WHEELER.

(Supreme Court, General Term, Second Department. December 12, 1892.)

1. CLAIM AGAINST DECEDENT'S ESTATE—EVIDENCE.

In a proceeding to establish a claim against a testator's estate it appeared that he was indebted to claimant in the sum of $20,000, secured by a mortgage on some property belonging to him. It also appeared that claimant released the mortgage on receipt from him of a check for $20,000, and that neither the mortgage debt nor the check had ever been paid. Claimant failed to produce the check on the trial, testifying that she had given it to the executor of testator to collect for her, and this fact he denied. *Held,* that the claim was sufficiently established, and that the production of such check was unnecessary to support it.

2. WILLS—LEGACY—PAYMENT OF DEBT TO LEGATEE.

It appeared that testator's first will provided for a legacy of $15,000 to claimant, and that he afterwards drew up another will, and informed his executor that he intended to leave claimant $30,000, instead of $15,000. The last will was drawn up a few days before the recording and release of the mortgage, and executed a few months later. *Held,* that there was nothing to show that testator intended that the increase of the legacy should operate as a payment of the mortgage.

**8. APPEAL—DECISION—JUDGMENT ON REVERSAL.**

Code Civil Proc. § 1317, provides that the appellate court may on appeal reverse, affirm, or modify such judgment appealed from. *Held*, that where the facts of a case are undisputed, and it appears to the appellate court that the defense cannot succeed, it is in the power of the court to reverse a judgment for defendant and award judgment to plaintiff.

Appeal from special term, Kings county.

Proceeding by Mary S. Van Slooten against Charles H. Wheeler, as executor of the will of Harry E. Dodge, to establish against testator's estate a claim of $20,000. Claim disallowed, and claimant appeals. Reversed.

For decision on former appeal, see 15 N. Y. Supp. 591.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

Merritt E. Haviland, (Martin J. Keogh, of counsel,) for appellant.

Hubbard & Rushmore and John D. Pray, (George G. Reynolds, of counsel,) for respondent.

DYKMAN, J. After the death of Harry E. Dodge, the plaintiff, whose name was then Mary L. Miner, presented a claim to the defendant, as executor of Mr. Dodge, for $20,000, with interest thereon from May 15, 1886, of which the following is a copy:

"Harry E. Dodge, deceased, on or about the year 1886 was the owner of the premises No. 278 Henry street in the city of Brooklyn, upon which said premises there was a mortgage of $20,000 owned by and belonging to me; and in or about the month of May, 1886, said Harry E. Dodge, deceased, sold said premises, and at his request I executed a satisfaction piece of the said mortgage, with the understanding and agreement that said Dodge would pay me the amount of the said mortgage upon receiving the consideration price of said premises from the purchaser thereof, whereupon thereafter he gave me a check for the face of said mortgage, to wit, the sum of $20,000, which said sum has not been paid to me, and against which there are no offsets or counterclaims of any name or nature whatsoever."

That claim was rejected and referred to a referee, who reported against the plaintiff. From the judgment entered upon that report, the defendant appealed to the general term of this court, and we decided in favor of the validity of the claim, and reversed the judgment. The case has now been tried before another referee, who disregarded the direction of this court, and decided against the plaintiff, although no new testimony was introduced on the part of the defendant. The plaintiff has now appealed from that judgment also, and we are required to re-examine the case.

There is no defense to this action, and never has been any; the whole reliance of the defendant being upon the inability of the plaintiff to prove her claim. The following facts are either undisputed or abundantly proven: On the 11th of March, 1882, Harry E. Dodge executed and delivered a bond and mortgage to the plaintiff for $20,000. She held them until April 21, 1886, when she procured the mortgage to be recorded, and on the 22d of April, 1886, she executed a satisfaction piece, and satisfied the mortgage of record. On the 1st day of May, 1886, Mr. Dodge sold and conveyed the premises to Louisa S. Reeve. After the 1st day of May, 1886, the plaintiff held the check of Mr.

Dodge for $20,000, drawn by him to her order upon the firm of Clark, Dodge & Co., dated between the 1st and 13th of May, 1886. Upon these facts, and some other undisputed facts which surround them, which never can be changed, the validity of the plaintiff's claim is susceptible of absolute demonstration, as we will proceed to show. It is the claim of the defendant that the acknowledgment of the payment of the mortgage contained in the satisfaction piece has not been explained, and is therefore evidence of the payment thereof. Let us see. Mary Magdalena Duryee saw the bond and mortgage in the possession of the plaintiff two or three years, and at her request took them to David F. Manning, a lawyer, and delivered them to him. The referee sustained an objection to her stating the instructions she gave him, which was erroneous, but immaterial. Manning testified that Mrs. Duryee brought the bond and mortgage to his office, and requested him to place the mortgage on record, which he did; that he prepared a satisfaction piece of the mortgage at the plaintiff's request, and placed that on file also; that, after the mortgage came from the register's office, he returned the bond and mortgage to the plaintiff, as he remembers, and that he never saw Mr. Dodge. The plaintiff says he did not so return them. This testimony shows that the mortgage was not paid at the time of the execution and filing of the satisfaction piece, and that the mortgage was satisfied without payment, for it cannot be assumed that it had been paid previously. The bond and mortgage were not found among the papers of Mr. Dodge, and that raises a fair presumption that they were never delivered to him, for the mortgage was recorded and satisfied only six weeks previous to his death, and would not probably have become mislaid in that short time if they had been delivered to him. If they were never delivered to him, the presumption is they were never paid, for if he had paid them he would have demanded their delivery to him.

Again, Mr. Dodge sustained an attack of paralysis on the 14th day of April, 1886; another on the 7th day of May following; and the third, which proved fatal, on the 3d day of June. It may safely be assumed that the mortgage was not paid before it was recorded, which was just two weeks after the first attack of paralysis, for, if it had been paid, there would have been no object in placing it on record. The evidence indicates that Mr. Dodge was confined to his house after the first attack. If he paid the mortgage on the 22d, when it was satisfied, or near that time, he doubtless did so with a check, and that check, or his check book, or his bank book, or his bank account, would, either or all of them, show such payment; and all these sources of proof are under the control of the defendant. Or, if he paid the mortgage in money, it was brought to him by some person, and so large a sum would be drawn especially for that purpose, and it would be charged to him in his bank account. But there is no claim that his bank account, or his account with his firm, was depleted to the amount of $20,000, or any other sum, about the time when it is claimed this payment might have been made. Yet not one word of proof was given upon these subjects, and the silence is exceedingly significant. It is always legitimate to draw

strong inferences against a party who fails to furnish material evidence when it is in his power so to do. Neither were the papers in the possession of the plaintiff. They constituted the evidence of her claim, and their possession was all-important to her. After his death she knew her claim was against the estate, and it was to her interest to preserve them. It cannot be presumed that she would destroy or withhold them against her own interest, as she would be obliged to prove them to establish her claim. These facts show that Mr. Manning may well have been mistaken in his belief that he returned the papers to the plaintiff. Beyond all this, however, after the mortgage was satisfied, and Mr. Dodge had sold his house, and between the 1st and 13th days of May, 1886, Dodge gave the plaintiff his check on the firm of which he was a member, of $20,000; and the presumption of law is that the check was given for a debt due from him to her; and as no other indebtedness is shown or claimed, and as the check was for the amount of the mortgage, the presumption is conclusive that the check was given for the mortgage debt. The burden of explanation was cast upon the defendant, but he attempted none, although he has access to all the papers of the testator under his control.

These facts and circumstances prove conclusively that the mortgage was not paid when it was satisfied, and that the check was given for its payment. But it was said the check is not produced, and there was no proof of its loss. The easy answer is that neither was necessary. The claim of the plaintiff is not founded upon the check. That was only material as evidence that the mortgage was not paid. The claim is based on the debt evidenced by the mortgage, and the original indebtedness never has been denied or questioned. The only defense is payment. But why was not the check produced? The plaintiff once had it, and it was a piece of evidence of paramount importance; it constituted convincing proof that the mortgage had not been paid. If she had it now, she would produce it. It was against her interest to destroy it, and, if she had lost it, she could easily say so, and that would settle the question. She does not produce it, and, as we have seen, its loss or destruction cannot be assumed. It has not been presented for payment, and has never been paid. She would naturally preserve it with great care, and refuse to surrender it except to some one, or in some way that she supposed would procure her the money. That presumption is natural. She says that she delivered it to the defendant soon after the death of Mr. Dodge, with the statement that Mr. Dodge had told her, if anything happened to him, to give the check to the defendant, and let him collect it for her; if she did not collect the check, to let the defendant collect it for her. This is denied by the defendant. Her conduct accords with her testimony, for, if Mr. Dodge told her the defendant would collect the check for her, she would naturally deliver it to him for that purpose. Her testimony naturally accounts for the absence of the check, and shows the voluntary surrender of it to a person whom she believed would collect it for her, and we cannot account for its absence upon any other consistent theory. Such is, in our view, the

most reasonable conclusion respecting the failure to produce the check, but, as we have already stated, such failure is immaterial to the determination of the case.    With the check in the possession of the plaintiff at the death of Mr. Dodge, this analysis of the undisputed facts, in the light of surrounding circumstances, establishes the validity of the plaintiff's claim.    The validity of the original indebtedness for which the bond and mortgage were given was not disputed.    The defendant denies that the plaintiff delivered to him the check, and denies some other portions of her testimony, and one or two of his witnesses do the same, but no witness denies the testimony of either of the witnesses for the plaintiff, and we have considered the case and reached our conclusion entirely independent of the testimony of the plaintiff.    Our examination has proceeded thus far independently of the parol evidence, but a few extracts from the testimony on the part of the plaintiff will show how well it harmonizes with all the facts and circumstances.

Mrs. Laura Brewster Halstead, a witness called in behalf of the plaintiff, testified as follows, among other things:

"Question. State whether or not you ever saw a check at 52 Sidney place at any time shortly prior to Mr. Dodge's death. Answer. Yes, sir; I did. Q. About how long prior to Mr. Dodge's death was this? A. I don't exactly know; only a few weeks. Q. Do you know the date of his death? A. Some time in the early part of June. * * * Q. Had you ever seen this check before this occasion that you have spoken of? A. Only once. Q. You only saw it once? A. Yes, sir. Q. Or once before? A. Only saw it this once. Q. Where was it? A. On the bureau. Q. In whose room was it? A. Mrs. Van Slooten's room. * * * Q. Will you state to whom it was addressed, if to anybody? A. 'Pay to Mary L. Miner the sum of twenty thousand dollars. [Signed] Harry E. Dodge.' Q. Will you please give the date of it? A. Some time in May, the first or second week; I don't remember the date exactly. Q. Will you state to whom it was addressed, if to anybody? A. Do you mean to whom the envelope was addressed? Q. No, to whom the check was addressed. Was it a blank check? What was on the face of it? A. It was Clark. Dodge and Company on the top, and made payable to Mary L. Miner. Q. Had you ever seen Mr. Dodge write? A. Yes, sir. Q. Were you familiar with his signature? A. Yes, sir. Q. You knew it? A. Yes, sir."

Miss Sadie D. Dye, a witness for the plaintiff, testified as follows, among other things:

"Question. Did you hear any conversation between Mr. Wheeler and Mrs. Van Slooten on any question that day? Answer. Not exactly a conversation, but I heard some words pass between them. Q. What were those words, as you recollect them, Miss Dye? A. I heard Mrs. Miner at the time say that those were the papers that she had in her hand that Mr. Dodge told her to give to him, and then that was all I heard."

David F. Manning, a lawyer, whose name we have already mentioned, testified, among other things, as follows: After stating that he received the bond and mortgage from Mrs. Duryee, and that she requested him to place it on record, and that he did so, and he prepared the satisfaction piece of the mortgage at the request of the plaintiff, he testified as follows:

"Question. And what did you do with the satisfaction piece? Answer. Placed that on file also. Q. The satisfaction which you placed on file was of the mortgage which you had received from Mrs. Duryee? A. Yes, sir. Q. Tell me whether or not that is a copy of the mortgage, to the best of your recollection. (Paper shown witness.) A. I think it was the same mortgage. I only recollect it by the amount, and I think the property was the Henry street property. Q. What did

you do with the bond and mortgage after the mortgage came back from the register's office? A. I returned the papers to Mrs. Van Slooten, as I remember, after the mortgage came back. * * * Q. Between the date of this satisfaction piece and the date of Mr. Dodge's death, on the third day of June, 1886, did you see what purported to be the twenty thousand dollar check in the possession of the claimant, Mrs. Van Slooten? A. I saw a check; the exact amount I could not be positive about, but I think it was for twenty thousand dollars. It was for a large sum of money, and I think that was the amount in Mrs. Van Slooten's possession. Q. Will you please state whether or not the check you saw was on a blank similar to the one I now show you? A. I cannot remember that the check was. I think it was the same color as this check, but it seems to me the check was larger, though I would not be positive. I remember the name of Clark, Dodge and Company distinctly. Q. Will you state by whom that check purported to be signed? A. It purported to have been signed by Mr. Dodge. Q. Harry E. Dodge? A. Yes, sir. * * * Q. On your direct examination at the former hearing you testified with regard to seeing a check in Mrs. Van Slooten's possession. You did not state to whose order that check appeared to be drawn. If you know, please state. A. Drawn to the order of Mary L. Miner."

The respondent bases an argument against the validity of the plaintiff's claim upon her delay in its presentation, and her inconsistent conduct; and, while those elements are always suspicious, yet in this case, when we start out with the original indebtedness admitted, and no answer to it attempted but payment, neither delay nor inconsistency can be allowed much force. Nothing but payment will meet the demand, and that plea is destroyed by the circumstantial evidence that clusters round the whole transaction.

We have made this lengthy and careful examination because it was due to the case in view of the aspect it has assumed. A second referee has disregarded the decision of the general term, and the counsel for the defendant, with great apparent gravity, and with much honeyed commendation of the report and the justice it had wrought out by relieving this estate from the payment of an honest claim, urged this court to reverse the rule that requires a trial court to obey the decision of the appellate tribunal upon a new trial, yield its opinion, and follow the decision of the learned and able referee, and refrain from interference with the judgment he has directed. We find ourselves unable to yield to this argument, or to modify our views, or to forbear from interference with this judgment, and so we have stated fully the reasons which impose such inability.

It is intimated in the points of the respondent that the mortgage was paid by the increase of the legacy in the last will from $15,000 to $30,000, but the theory is inconsistent, and destitute of support, and only requires the citation of a few facts to accomplish its overthrow. The last will of the deceased was drawn by himself, May 8, 1886, the day after his second attack of paralysis, but it was not executed at that time, as we shall presently see. That was six days before the mortgage was recorded, and seven days before it was satisfied. When the will was executed we are not informed, but it was executed and in the possession of the plaintiff on the 3d day of June, when Mr. Dodge died. The defendant testified that the plaintiff handed him two checks the last of July, 1886,—one for $10,000, and one for $5,000,—drawn by Mr. Dodge upon Clark, Dodge & Co., payable to the order of the plaintiff, and

signed by the deceased.   He does not give the date of either of these
checks.   The defendant further testified that he looked at them, and
said to the plaintiff:

"May, these are two papers which Mr. Dodge spoke to me about at the time he
stated to me that he had made me his sole executor, striking out Mr. Clark as co-
executor., 'I have drawn my will in my own handwriting.  It has not yet been
witnessed, but I have drawn two memorandum notes or checks, showing that I
desire to leave Mrs. Van Slooten thirty thousand dollars.  The old will called for
fifteen thousand dollars, the new will thirty thousand dollars, as her legacy, and
upon the completion of the new will I shall destroy the old will.'  I said to May,
'You see that these two sums of fifteen thousand dollars stated in these two pa-
pers, added to the sum of fifteen thousand dollars in the original will, shows that
Mr. Dodge has carried out that which he said to me he desired to do.  They have
no value.'  And Mrs. Miner said to me, 'I understand that perfectly.' "

So it comes to us from the lips of the testator himself that the increase
of the legacy was a gift, and not the payment of a debt.   Moreover, the
amount does not correspond with the mortgage debt, and, if Mr. Dodge
had designed it as a cancellation of that debt, it must be assumed he
would have said so, instead of announcing an entirely different inten-
tion.   Mr. Wheeler did not give the date of the conversation, but it
harmonizes with the other facts to assume that it was on the day the new
will was drawn, for the testator said he had drawn his will, but it had
not been witnessed, and when it was completed he would destroy the
old one; and we know from another witness that the testator threw the
old one in the fire the same day.   So it is plainly shown that the mort-
gage was not paid or designed to be paid by the increase of the legacy,
and a legacy to a creditor is not to be deemed in satisfaction of a debt,
unless so intended by the testator.   Clarke v. Bogardus, 12 Wend. 68;
Sheldon v. Sheldon, 133 N. Y. 4, 30 N. E. Rep. 730.   The judgment
should be reversed, and, instead of ordering a new trial, we have con-
cluded to direct a judgment in favor of the plaintiff for the following
reasons:   All the testimony on both sides is contained in the case, and
the facts upon which we base our decision are undisputed, and cannot
be changed in any material respect upon another trial.   The action has
been twice tried, and the material testimony was substantially the same
on both trials; and, while the power to render an absolute judgment
upon reversal should be exercised with great caution, yet, as the power
exists, and we see plainly that the defense cannot succeed, we deem this
a proper case for the exertion of the authority.   It only modifies the
judgment, and our power of modification is unrestricted.   Code, § 1317.[1]
"Where the appellate court can see that no possible state of proof appli-
cable to the issues in the case will entitle the party to a recovery, it is
not necessary, or even proper, that a new trial should be awarded."   Ed-
monston v. McLoud, 16 N. Y. 545.   See, also, Brackett v. Griswold,
128 N. Y. 648, 28 N. E. Rep. 365; Arthur v. Griswold, 55 N. Y. 411;
Price v. Price, 33 Hun, 432.   The last case cited was an appeal from a
judgment entered upon the report of a referee in favor of the defendant,
and the general term held that, upon the facts found by the referee, the

---

[1] Code Civil Proc. § 1317, provides that on an appeal from a judgment or an or-
der the court or the general term to which the appeal is taken may reverse or af-
firm, wholly or partly, or may modify, the judgment or order appealed from.

plaintiff, and not the defendant, was entitled to judgment, and that the only error committed by the referee consisted in a misconstruction of the legal effect of the facts proved, and that the general term might direct a judgment to be entered in favor of the plaintiff, and need not order a new trial. Price v. Price, 33 Hun, 76, 432. The judgment should be reversed, and judgment awarded for the plaintiff for the full amount of her claim, with interest and costs. All concur.