## DIMMERS v. ARMITAGE et al.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

COMPROMISE AND SETTLEMENT—EVIDENCE—PRESUMPTION.

A vendee wrote the seller, demanding a new boiler to replace an alleged defective one sold him, and for expenses incurred in consequence. A letter containing a denial of the defects, a refusal of the vendee's demand, and a demand for payment of a note given as a part of the price, and also a claim on open account, was written in response. Shortly afterwards the seller, under a mortgage given to secure the price, seized the vendee's boat containing the boiler. The parties then made a settlement, wherein the note and open account, and the seller's expenses incurred in taking possession of the boat, were allowed by the vendee, and the vendee's claim for certain expenses incurred by reason of alleged defects in the machinery was allowed by the seller; thereby leaving a balance of $871, which was, at the request of the vendee, reduced to $850, of which sum $700 was thereupon paid, and a note was given for the balance. *Held,* that the settlement raised a presumption that all demands existing in favor of either party were then liquidated, and that the note was given for a balance found to be due.

Follett and Ward, JJ., dissenting.

Appeal from judgment on report of referee.

Action by Magdalena E. Dimmers against James Armitage, Allan Herschell, and George Herschell for damages for breach of contract. From a judgment in favor of plaintiff, defendants appeal. Reversed.

On the 5th day of May, 1890, the defendants, who were then co-partners in business in Tonawanda, in this state, and as such engaged in the manufacture of engines and boilers, made a written proposition to the plaintiff to construct, and place in a canal boat which she was then building, an engine, and a boiler of sufficient capacity and power to operate the engine; the same to be "made of very best material and workmanship throughout, with all the pipe and pipe connections complete and ready for steam. * * * It being understood that the above machinery will work, and guarantied to give satisfaction." The price named in this proposition was $3,600, of which sum $500 was to be paid upon the acceptance of the offer; $500 when the contract was completed; $500 on the 1st day of December, 1890; $1,000 on the 1st day of December, 1891; and the balance of $1,100, on the 1st day of December, 1892. It was also proposed that notes should be given for such portions of the contract price as were not paid upon the completion of the work, which notes were to bear interest at 6 per cent., and to be secured by a chattel mortgage upon the boat and "entire outfit." This proposition was accepted by the plaintiff, and thereafter the engine and boiler were manufactured by the defendants, and placed in proper position in the plaintiff's boat, and the same were paid for in accordance with the terms of the contract. The plaintiff brings this action to recover damages of the defendants for a breach of their contract, it being alleged in the complaint that "the said engine was poorly, unskillfully, and improperly constructed, and that the boiler was of insufficient capacity to operate the said engine, and * * * that by reason of the improper construction of the said boiler and machinery the plaintiff was obliged to and did lay out and expend for repairs thereto about the sum of three hundred dollars; that said engine, boiler, and machinery were made of such poor material, and were constructed in such an unskillful and unworkmanlike manner, that they frequently became broken and useless, and the plaintiff was obliged to and did lay up and stop her boat upon many occasions to have repairs made thereon, which repairs were necessary to enable the boat to proceed; and that such delays resulted in great loss to the plaintiff, to wit, the sum of twenty-five hundred dollars." The defendants joined issue with the plaintiff, and, while admitting their copartnership, the execution of the contract, and the construction of the engine and boiler in pursuance of such contract, denied the other allegations of the

complaint, and alleged a full settlement of all matters in controversy between the parties. The issues thus joined were referred to a referee, who found in favor of the plaintiff, and from the judgment entered upon his report this appeal is taken.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Root & Orton, for appellants.
Arthur W. Hickman, for respondent.

ADAMS, J. It is a conceded fact in the case that the parties did enter into the contract which is set forth in the complaint, and the learned referee has found that its breach, so far as the defective character of the boiler is concerned, is fully established, to the plaintiff's damage in the sum of $350. The evidence upon which this finding is based is quite conflicting, and not altogether convincing; there being much in the case to justify the inference that the failure of the boiler to operate satisfactorily was due in some measure, at least, to the unskillful, not to say negligent, manner in which it was used. But assuming, as we do, that the contract is one of warranty, and that the right to recover damages for its breach survives acceptance of the property contracted for (Canning Co. v. Metzger, 118 N. Y. 260, 23 N. E. 372), we are not prepared to hold that the evidence is insufficient to support such a finding. Upon the question of settlement, however, we are unable to concur in the conclusion reached by the learned referee, that the parties "did not in December, 1890, or at any other time, settle the plaintiff's claim for damages growing out of the insufficient capacity of the boiler." The undisputed evidence in the case shows that upon the 3d day of December, 1890, the plaintiff's attorney addressed a letter to the defendants, containing a statement of the plaintiff's claim in regard to the boiler, and demanding, among other things, that the defendants should furnish a new boiler, and compensate the plaintiff for expenses which she had necessarily incurred in consequence of its defective condition, and for repairs made to the engine. This letter was answered upon the following day by a letter written by the defendants' attorney, in which the defendants declined to accede to the plaintiff's claim, but, upon the contrary, insisted that they had fully complied with all the requirements of the contract, and demanded payment of a note of $500 which had been given as part consideration for the machinery, and which had fallen due the day before, and also of an open account which they had against the plaintiff amounting to $380.43. Shortly after this letter was written, the defendants, in pursuance of the right secured to them by their chattel mortgage, seized and took possession of the plaintiff's boat; and upon the 9th day of December the plaintiff's husband, who had in all these transactions acted as her agent, sought an interview with the defendants, which, it is conceded, resulted in at least a partial settlement between the parties, and the payment by the plaintiff to the defendants of the amount then their due. The interview between the parties upon this occasion lasted for a considerable length of time, and was participated in by the plaintiff's agent, and also by a friend of his, who accompanied him to the defendants' place of business for the

purpose of assisting him in obtaining a settlement; and, while it is true that it does not appear that at this time it was expressly agreed that all matters in difference between the parties should be settled, it does appear that the defendants presented their claim, which included the amount due upon the note, with protest fees thereon, their open account against the plaintiff, and the expenses which they had incurred in taking possession of the boat. And to partly offset this claim the plaintiff's husband insisted that $65 should be deducted from the amount claimed by the defendants, to cover certain expenses which had been incurred by reason of alleged defects in the machinery, and it appears that this sum was allowed by the defendants. It was then found that there was still due the defendants the sum of $871.43, and at the request of the plaintiff's agent this balance was further reduced by the sum of $21.43, so as to leave the amount going to the defendants just $850, of which sum $700 was thereupon paid in cash, and a note signed by the plaintiff was given for the balance of $150, payable in three months after date. This note was subsequently paid, and thereafter the remaining notes and the chattel mortgage given to secure the same were, at the request of the plaintiff, assigned by the defendants to a third party. This settlement, conducted in the manner it was, occurring at the time it did, and consummated as it was by the giving of a note, fairly raises the presumption, we think, that all the demands existing in favor of either of the parties were then liquidated, and that the note was given for a balance found to be due from the maker. Lake v. Tysen, 6 N. Y. 461; Sheldon v. Sheldon, 133 N. Y. 1, 30 N. E. 730; Sherman v. McIntyre, 7 Hun, 592; Wright v. Wright, 74 Hun, 138, 26 N. Y. Supp. 238. This presumption, of course, was one which the plaintiff was at liberty to rebut, and it is contended that this was done; but the evidence does not satisfy us that this contention is well founded. After the defendants had given evidence of the settlement, the plaintiff's husband was recalled to the stand, but gave no testimony in regard to it until after his cross-examination, when he was asked to state how he came to give this note. His explanation was to the effect that he had more than enough money upon his person with which to pay the whole amount due the defendants, and was quite willing to pay the same, but that at the urgent solicitation of the defendants' attorney, who was present during the negotiations, he was induced to give a note, instead of paying the balance in money,—which, to say the least, is not the manner in which such transactions are ordinarily conducted. Nor does this statement harmonize with that of the witness Diebolt, who testified that he conducted the negotiations for the plaintiff; that the plaintiff's husband was not present until they had been concluded, but that he remained outside of the room by the express direction of the witness. The evidence of these two witnesses, in our opinion, so far from negativing the presumption of a settlement, tends, rather, when taken in connection with all the other facts and circumstances in the case, to strengthen it; and the impression produced upon my mind from a careful reading of the entire record is that the finding of the learned referee upon this branch of the case is so clearly against the weight of evidence as to require a reversal of the judgment.

Judgment reversed, and a new trial ordered before another referee upon payment by the appellants of the costs of the former trial, with the costs of this appeal to the appellants to abide the event. All concur, except FOLLETT and WARD, JJ., dissenting.