O'BRIEN v. FOLEY et al.

(Supreme Court, Appellate Division, Second Department. April 4, 1912.)

1. WILLS (§ 58*)—CONTRACT TO BEQUEATH—PROOF REQUIRED.

To recover on an oral contract by a decedent to bequeath in consideration of services, the contract must be definite, equitable, and proved by clear evidence found in writings or the testimony of disinterested witnesses.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. § 58.*]

2. WILLS (§ 58*)—CONTRACT TO BEQUEATH—EVIDENCE—SUFFICIENCY.

In an action on a claimed oral contract by defendant's decedent to bequeath $10,000 to plaintiff in consideration of plaintiff's personal services to decedent, evidence *held* insufficient to sustain a judgment for plaintiff.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. § 58.*]

3. WILLS (§ 58*)—CONTRACT TO BEQUEATH—ACTION FOR BREACH—EVIDENCE—RELEVANCY.

In an action for breach of defendant's decedent's contract to bequeath $10,000 to plaintiff for plaintiff's personal services to decedent, it was improper to permit plaintiff to show that decedent had expressed a dislike for all or some of her relatives at various times.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. § 58.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Westchester County.

Action by Annie O'Brien against John F. Foley and another, executors. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

William J. Martin (Frank A. Spencer, Jr., on the brief), for appellants.

Joseph H. Choate, Jr. (Alexander Keogh and William Wickham Hoffman, on the brief), for respondent.

CARR, J. The plaintiff has recovered judgment against the defendants as executors under the will of Hannah O'Brien, deceased, for the sum of $10,000 after a trial before a jury in the Supreme Court in Westchester county. Her complaint demanded judgment for $10,000, and set forth two causes of action. In the first cause of action it was alleged that the decedent, Hannah O'Brien, had entered into an express oral contract with the plaintiff in August, 1908, whereby the decedent agreed to leave to the plaintiff by last will and testament the sum of $10,000, provided the plaintiff would enter the household of the decedent and render services as a personal attendant and companion during the decedent's lifetime, and that the plaintiff accepted the agreement and performed the conditions by her to be performed, but that the decedent neglected and failed to make provision by her last will in favor of the plaintiff as agreed. The second cause of action pleaded the rendering of services by the plaintiff at the request of the decedent, and rested upon an implied contract to pay the reasonable value thereof, which was pleaded at the sum of $10,000. The jury found a verdict for the plaintiff expressly upon the first cause of action in the sum of $10,000. From the judgment entered upon said verdict, as well as from an order denying a motion to set aside the verdict, the defendants appeal.

[1] Suits of this character have been so frequent in the courts in recent years as to give rise to a considerable number of authorities all of which declare a uniform rule, namely, that, to recover upon such an alleged contract, it must be established as certain and definite in character, equitable in its nature, and proved by clear and convincing evidence, either shown by writings or by the testimony of disinterested witnesses. Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916; and cases cited; Taylor v. Higgs, 202 N. Y. 65, 95 N. E. 30; Butcher v. Geissenhainer, 125 App. Div. 272, 109 N. Y. Supp. 159; Holt v. Tuite, 188 N. Y. 17, 80 N. E. 364; Tousey v. Hastings, 194 N. Y. 79, 86 N. E. 831; Miller v. Hill, 137 App. Div. 378, 121 N. Y. Supp. 741. While the circumstances in each of these cases differ materially, the rule declared in each is uniform, as before stated.

[2] With this rule in mind, we shall examine the facts disclosed at the trial. In the first place, there are no writings between the parties, in evidence, which in any way affect the issue. The plaintiff is a daughter of a cousin of the decedent's deceased husband. Mrs. O'Brien had met her while visiting her husband's relatives in Ireland. The

plaintiff was then a young girl, residing with her mother on a farm owned by her brother. Her family was apparently comfortable in circumstances, but she was one of seven living children, and she rendered such services in her brother's house and about his farm as was customary for a farmer's daughter. The decedent evidently took a fancy to her, for when she made a will in April, 1908, she made the plaintiff a legatee therein to the extent of $200. · The decedent some time thereafter invited the plaintiff to come to this country, and sent her the passage money. The plaintiff. arrived here in August, 1908, and went to reside with the decedent in a small house on Staten Island, in a household which, excepting the plaintiff, consisted of the decedent, her husband, then living, and a servant maid. The husband died in the next year, but the servant maid continued in the household until a few months before the death of Mrs. O'Brien, which took place on February 23, 1910. The plaintiff and the decedent resided together in all about one year and a half. The decedent had a sister, nephews and nieces, and other relatives, including a child of a deceased adopted son. For all of these persons she had made definite and discriminating provisions by her will of April, 1908. In the plaintiff's complaint the alleged contract is pleaded as having been made in August, 1908, at which time the decedent's husband was yet alive. Most of the proofs advanced in support of the alleged contract consist of statements alleged to have been made at various times by the decedent to her friends and neighbors. A Mrs. Dolan testified that the decedent had told her that she had sent for the plaintiff to come from Ireland to live with her, and had remarked: "I am not sending for her to come to live with me for nothing." A Mrs. Perry, a Polish woman, a neighbor, testified that on several occasions the decedent had told her that she did not pay the plaintiff any wages, but that, if the plaintiff should be "a good girl" and remain with her during her lifetime, she (the decedent) would leave the plaintiff "well fixed," "well fixed and $10,000"; and that at another time the decedent said about the plaintiff, "When I got to die, I leave her $10,000 in capital and one of the houses"; and, again, that she would leave her $10,000 and some of the houses. One Wencke, a hotel keeper and liveryman, testified that he had heard the decedent say about the plaintiff that "she was going to take care of her" (the plaintiff). A Mrs. Cody testified that she had heard the decedent say, with reference to a specific house, that "she intended to give that to Annie" (the plaintiff), and again that "she intended to do what was right by her," and that "she had remembered her in her will." Margaret O'Brien, a sister of the plaintiff, testified that she had heard the decedent say to the plaintiff that "she would never have to work, that she was well provided for. That is all the conversation," and that this happened in January, 1910, the month before the decedent's death. Giving all of this testimony full weight, without in the least subjecting it to the criticism which is always invited by proofs resting upon alleged declarations of a deceased party (Sheldon v. Sheldon, 133 N. Y. 1, 30 N. E. 730), it nevertheless falls far short of establishing clearly and convincingly that the plaintiff and the decedent had entered into a certain and definite agreement, whereby the decedent became bound to leave to the plaintiff by last will the sum of $10,000 or any other fixed

amount. It is claimed that whatever uncertainty there may be in the proofs given by these specified witnesses was removed by the evidence of one Conner, who was produced as a witness by the plaintiff. Conner was the postmaster at a little place known as New Dorp, and carried on a small business as a real estate and insurance agent and likewise dealt in coal and wood. He had known Mrs. O'Brien, the decedent, for a number of years, and had had several business transactions with her. He testified that shortly before her death the decedent invited him to call at her house on business, and that he went there a few days before she died, and had a conversation with her; that in this conversation the decedent asked him if he was "capable of making a will or codicil or something of that nature, as she had made an agreement with Annie O'Brien" (the plaintiff), "and she wanted it down in black and white."

This further testimony was in part as follows:

"She said as Annie was here, and she had not had any occasion to provide for her, and as she had no other chance since, she asked the question if I had paper that I could fix it up, and she wanted to put this arrangement of this agreement in black and white about Annie; and she said that she would leave her $10,000, and I said to her, of course, I did not have time to. It was something to do right off the reel, and, of course, I wanted to have a little recess to make up that paper. I simply made the excuse that I had no paper, and so an appointment was made when I would come with the proper blanks and ink and so forth."

He said, again, that the decedent had said to him:

"That she had made an arrangement or had made an agreement with Annie. She said that she had made an agreement with Annie O'Brien, and wanted an addition, a codicil to her will, giving her $10,000."

The examination of this witness was quite at length, and he testified over and over again as to the alleged conversation, further describing it as follows:

"She said she had made an agreement with Annie O'Brien, the little girl at her house; she wanted to take care of her. To put down the agreement which she had previously made with Annie O'Brien."

And again:

"She said that she had made an arrangement—an agreement with Annie O'Brien to leave her an amount of money; and that she wanted to put that agreement in black and white."

The witness testified that he did not at the time make any memorandum of this conversation, but that, when he returned to his office, he did make a memorandum on a stub of an old receipt book. This stub being produced, showed some erasures and an entry as follows:

"Hannah O'Brien
Feby 23, 1910.
10,000
&
houses
Cody & Perry
Conner."

He testified that this memorandum was made on February 21st, and the words "February 23," meant the date on which he was to have the paper ready for execution by the decedent. When asked

on cross-examination what was meant by the words "Cody, Perry and Conner," he said that they were names given to him by the decedent as her attorneys in New York, "who had charge, who had originally made the will, or something of that sort. That is the only thing I know. That I put it down. They had charge of the house." Again, he repeated that the decedent had told him that Cody, Perry and Conner were the people who drew the will, or "something of that sort." When it was pointed out to him that the names "Cody and Perry" were identical with those of two witnesses who had testified at the trial for the plaintiff, and that "Conner" was likewise his own name, he changed his attitude, and testified:

"I put them down as near as I could, and it meant that Conner was third fiddle. That is it. It is simply that I had the job. Conner was my own name. I understood Cody and Perry to be attorneys or managers of the estate of Mrs. O'Brien or the ones who had charge of drawing legal papers. Those names did not refer to Mrs. Cody or Mrs. Perry, who have testified in this case. Not that I know of. * * * These names were names interested in the estate. Whether they had drawn up the legal papers or whether something of that had been done. I could not say that these names were names of persons she had given to me as names of persons whom she wanted to witness her new will, but those names were mentioned by Mrs. O'Brien."

To say the least, it is quite beyond understanding that the witness should have put down his own name as "a third fiddle, the one who had the job." It is likewise not very credible that he could not remember the meaning of his own memorandum, and yet be so mindful that the decedent had used the word "agreement" when talking of the plaintiff. There was no pretense at the trial that any persons known as "Cody and Perry" were ever the attorneys or agents of the decedent. It appears too plainly for dispute that the witness was either evasive intentionally, or so confused and unreliable in his attempt to repeat actual happenings that his evidence on this point cannot measure up to the standard by which appellate courts measure the proofs in such an action as this. Doubtless he did call on the decedent, and had some conversation with her as to the preparation of a codicil. There is other evidence in the record that at this time the decedent had intended to make a codicil to her will. But his testimony was so inconsistent in important details, and the record thereof shows such a tendency to beat about the bush, with lack of candor in many particulars, that we deem it insufficient to support this judgment. As this action must be retried, it is not out of place to make an observation about some happenings at this trial which should not be repeated.

[3] The learned counsel for the plaintiff sought to prove that the decedent had expressed a dislike for all or some of her relatives at various times. This testimony was scarcely relevant to the precise question at issue. It was objected to whenever offered, and was admitted over exception.

In one instance the record shows the following happening: The witness Dolan, called by the plaintiff, was asked by plaintiff's counsel the following question: "Did you ever have any conversation with Mrs. Hannah O'Brien about her living relatives and her relations with

them?" This was objected to, and the objection overruled and an exception taken; the defendant's counsel saying:

"We are going to take exception to that on the ground that this is an action based on a contract, and that this testimony is immaterial."

To this the court replied:

"I do not take it on the contract, but to show her condition of health."

The witness answered that there had been a conversation, giving no time or place. Then a new question was put:

"Now will you tell us what that conversation was, what she said about her relations with her relatives, whether friendly or not, and what you said?"

This was objected to, the objection overruled, and an exception taken. It is not quite clear to this court why the learned trial court allowed this line of testimony on the theory that it was relative to the decedent's condition of health. Unfortunately this incident was not isolated.

The judgment and order should be reversed and a new trial granted, costs to abide the event. All concur.