GEORGE H. ADAMS and Another, as Executors of ALICE C. BARLOW, Deceased, Appellants, v. STEPHEN H. OLIN and Another, as Executors of SAMUEL L. M. BARLOW, Deceased, Respondents.

*Entries in books — statute of limitations — payment — satisfaction of a debt by a legacy, when presumed — the rule not favored.*

A lawyer entered, in 1864, in his books of account, a credit to his wife of her share of a gift made to himself and to her. He invested the moneys for her, and entries were thereafter made on both sides of the account until a balance was struck in her favor of $23,187.42 on December 31, 1879. No further entries were made in the account until April 26, 1886, when three items were credited therein to her and certain amounts were charged, leaving a balance, as shown by the books December 31, 1886, of $22,771.12 In October, 1888, the wife was credited with $100, which sum was disbursed within a few days.

The husband having died, and the wife's claim being disputed by his executors, a reference of the matter was agreed upon under the statute relating to disputed claims against decedents' estates:

*Held,* that the defense of the statute of limitations, interposed upon the ground that more than six years had elapsed between the balance of 1879 and that of 1886, could not be maintained.

That the entries of 1886 and of 1888 showed the existence at those dates of a running account, and were in extension of it.

That the fact that subsequent to 1864 the husband drew many checks in favor of the wife, which were carried by him to his " expense account," did not, unexplained, raise a presumption that such moneys were payments to her on account of the gift in his hands.

The husband executed his will in 1872, to which certain codicils were added, the last codicil being made in 1880. He stated in his will that its provisions in favor of his wife were intended " to be in lieu and in bar of all dower or other her interest in my property and estate."

*Held,* that, in view of his statement in his books of a balance in her favor as late as December 31, 1886, he did not intend that the indebtedness created by said gift should be discharged by the clause " in lieu of dower or other her interest " in his property.

That the rule that a testator intends that a debt shall be satisfied by a legacy is not favored in the law, and the court will seize upon slight circumstances, repelling the presumption, to hold otherwise.

Appeal by the plaintiffs, George H. Adams and Peter T. Barlow, as executors of Alice C. Barlow, deceased, from a judgment made at a Special Term, held in and for the county of New York on the 20th day of May, 1891, confirming the report of a referee dismiss-

ing the plaintiffs' claim and awarding costs against them, with notice of an intention to bring up for review upon such appeal an order entered at said term on the same day, especially in so far as it ordered costs against them, and denied their motion to set aside said report.

*George H. Adams,* for the appellants.

*George L. Rives,* for the respondents.

Patterson, J :

This is an appeal from a judgment entered on the report of a referee, appointed under the statute on the consent of parties, to determine a disputed claim against the estate of S. L. M. Barlow, deceased. The learned referee held that the executors were justified in rejecting it and found against the claimant. The claim was presented by the executors of the will of Mr. Barlow's widow, and was based upon an apparent balance on his books showing on his ledger, upon a separate account standing in her name, as due her on December 31, 1886, the sum of $22,771.12. This account was opened in March, 1864, with a credit of cash $19,862.50. In Mr. Barlow's cash-book of the same date the same amount is credited to Mrs. Barlow. The origin of this account is given in the evidence. A client of Mr. Barlow, appreciating the professional services of that gentleman, in addition to paying his charges therefor, presented to Mr. and Mrs. Barlow certain securities, which being sold through a broker, part of the avails, viz., the amount with which the account is started, were credited by Mr. Barlow to his wife, seemingly as her proportion of the gift. He immediately proceeded to invest this money for his wife. He purchased a house and from time to time changed the investment, and there were entered.in both his cash-book and ledger the proper charges relating to the changes of investment, and also of other items of money received and disbursed for her. Such entries were made by his bookkeepers from the time the account was opened until December 31, 1879, when there was a balance struck in her favor on the ledger of $23,187.42.

Looking at Exhibit No. 1 (defendant's), which is a statement made up from the cash-book, there appear to have been but two items charged directly against Mrs. Barlow in 1879, and they, being posted

in the ledger and deducted, make the above-mentioned balance at the date last named. From that date no entry is made in this special account of Mrs. Barlow's, either in the books of original entry or the ledger, until April 26, 1886, an interval of over six years, when she is credited with an amount received from Hamilton, executor, etc., of $2,476.07, and two small items of cash. On the debit side, in that year, she is charged with various sums exhausting the $2,476.07, and leaving a balance struck December 31, 1886, of $22,771.12. No other item appears in the ledger account after that date until October 22, 1888, when Mrs. Barlow is credited with $100, and, two days afterwards charged with its disbursement. During the currency of this account Mr. Barlow drew a great many checks to the order of his wife, which are not entered in it, *but which are charged in his books to expense account.* They are more than sufficient, if applicable to Mrs. Barlow's special account, to extinguish it. In his will Mr. Barlow made a bequest to his wife of certain personal property of great value and the income for life of one-half of his residuary estate, and declared that the provisions of his will in that regard were "to be in lieu and bar of all dower or other her interest in my property and estate." This will was executed in 1872, but republished by codicils, without change in the provision for his wife, the last being dated July, 1880. Two other accounts on Mr. Barlow's books were made the subject of examination on the trial, one with the country house at Glen Cove, called "Elsinore," and the other "Library Account," but we fail to see any connection between those accounts and the special account of Mrs. Barlow, or how they can affect the result.

Three defenses were urged before the referee: First, the statute of limitations; second, payment; and, third, the satisfaction of the debt by the provisions of Mr. Barlow's will in his wife's favor. The referee found that the statute barred the claim and that the debt was paid. He did not pass upon the effect of the provisions of the will. We think the decision of the learned referee was erroneous.

It cannot well be contended that entries in Mr. Barlow's books do not furnish *prima facie* the basis of an action against his estate. They are the books of account of a man who, according to the stipulation of the parties made part of the record, "had large and

varied business interests. He held fiduciary relations to many different people, and at various times received, for his clients, very large sums of money. During the greater part, if not the whole of his professional life, he kept complete books of account, consisting of cash-books, journal and ledger. These books were very carefully kept in respect to the *amounts of receipts and payments,* but in many instances are deficient in the matter of explanations of the character of amounts *received.* In most cases the entries of *receipts* contain merely the name of the person from whom *received,* and hence require reference to his correspondence and other sources to determine any question as to the basis of such *receipts.*" As showing the extent of the bookkeeping of his private business, it appears that, at the time of his death (1889), there were 175 accounts open on his own personal books. He examined such books, from time to time, but not very frequently. His bookkeeper generally made entries in the accounts from the stubs of the check-book, on which were indicated the nature of the payment from which was inferred the account to which it should be charged, but in cases of doubt it was the habit of the bookkeeper to apply to Mr. Barlow for instructions. This was done, at times, with reference to the expense account, and there is nothing to show that Mr. Barlow was not cognizant of all that was entered, and when it was entered *in the special account,* or that he was ignorant of the balance struck from year to year, or the fact that it was continued as a current account, notwithstanding the gap of six years, or that when the entries in and after 1886 were made, he did not intend them to be in continuation of that account. The account has all the force of an admission of an indebtedness to his wife arising out of his charge and administration of the moneys, with the balances of which she was credited at the respective dates of such balances. While account books of a party are not evidence in his favor, except under the limitation of well-known rules, they are evidence against him, and, whether kept by himself or his clerks, the presumption arising from them when he appears by them to be a debtor, is that the entries are correct, for he would not record or allow to be recorded so distinct a statement unless it were correct. If there is an error he must show it. It is about as deliberate an admission as can be made. Its very purpose

is to make a record to be preserved. We regard, therefore, this ledger balance resulting from entries corresponding with and taken from the cash-book entries, according to the bookkeeper's (Heppenstall) testimony, as sufficient to support the action, unless either of the specific affirmative defenses is to prevail.

The plea of the statute of limitations is based on the fact that more than six years elapsed between the striking of the balance of December 31, 1879, and the entry to Mrs. Barlow's credit of the payment made by Hamilton, executor, April 26, 1886. The referee held that the six-years bar applied, the entries subsequent to April, 1886, having been merely of the receipt and disbursement of a particular amount under exceptional circumstances. He also held that the account in its nature was such as exists between debtor and creditor merely. The entries explain themselves to this extent, at least; they show it was a running account of moneys belonging to Mrs. Barlow. Mr. Barlow was plainly treating and caring for the moneys the subject of this account, as held and paid out by him, separately from everything else. There is no evidence of a loan or that he paid interest. He regarded that account on December 31, 1886, as being one on which he was indebted to his wife in the balance then appearing, and in that balance there was included the amount brought down from 1879, and there is also a credit of that balance, as of the date of January 1, 1882. Let us assume that the six-years bar is that applicable to accounts of this character; even then the entries of 1886 and the striking of the ledger balance of December thirty-first, of that year, clearly showed the continuation of the account in such a way as to prove that Mr. Barlow considered himself as still holding the amount of that balance as then due his wife. The entries in 1886 are manifestly payments on account of the antecedent admitted balance of 1879, increased by the Hamilton check credited on the same account. They are in extension of an open account. Partial payments to keep alive a liability must be "the conscious and voluntary act of the debtor, explainable only as a recognition and confession of the existing liability." (*Blair* v. *Lynch*, 105 N. Y., 636.) But what better recognition or confession could be asked than that found in the debtor's own books in entries which he has directed to be made in the particular account, as he did those on the debit side in 1886.

The burden of proof was cast on the defendants to make out the defense of payment. It was not established. There is not sufficient evidence that the checks drawn to the order of Mrs. Barlow and entered in the stubs of the check-book *and carried to expense account* were either intended by Mr. Barlow to apply to or were received by his wife on the special account. The referee has presumed they were and has, in effect, transferred them from one account to another. The presumption is just the other way. The course of business relating to these checks was that they were all drawn by direction of Mr. Barlow and were entered in expense account by bookkeepers, from a certain diary or from the check-book stubs. There is nothing to show that these checks ought to have been debited to the private account of Mrs. Barlow, except in 1886, and they were then so entered. We know, from the testimony of Mrs. Moore, that about 1886 there was an understanding between her brother (Mr. Barlow), and his wife that certain bills of the latter should be paid from her own moneys. Mr. Barlow's books were balanced from time to time; kept by his clerks, open to his inspection, and presumably correct. Every check charged on those books to another account and now claimed to be in reduction of the special account must be proven to be applicable to that account. Mr. Barlow gave the instructions, as to charging the items in 1886, and this would show that he then knew the exact situation of the account, and the bookkeeper says he would have charged them to expense account still had it not been for the specific instructions.

Under the facts as they appear before us in the record, and assuming that this claim is a debt merely, we do not regard the testamentary provisions for Mrs. Barlow a satisfaction of the claim. The testator does declare that such provisions " are intended to and are to be in lieu and bar of all dower or other her interest in my property and estate," but whether a legacy shall satisfy a debt is always a matter of intention. (*Boughton* v *Flint*, 74 N. Y., 476.) It is said in *Williams* v. *Crary, Executor* (4 Wend., 443): " The rule on this subject seems to be that a legacy shall not be deemed a satisfaction of a pre-existing debt, *unless it appears to have been* the intention of the testator that it should so operate ; " and it is also said in *Eaton* v *Benton* (*infra*): " It will be seen, on looking into the books, that the courts have never been quite satisfied with the doctrine ;

and they have been ready to seize upon slight circumstances for the purpose of repelling the presumption, if, indeed, there be any — that the legacy was intended as a satisfaction of the debt." In the Williams case, in another court (5 Cow., 368), it is remarked : "Where there are any circumstances in the case to repel the presumption that such was the intention of the testator, courts have always eagerly seized upon them to prevent the application of the rule." (See, also, *Eaton* v. *Benton*, 2 Hill, 576.) In this case what is relied on to support the defendant's contention, it is true, is not a mere presumption, but the language of the tenth clause of the will; but the foregoing citations show with how little favor such a rule is regarded, and that we must look for the intention of the testator. The clause of the will referred to is, as has been well remarked, merely the ordinary clause to bar dower, but there are circumstances extrinsic of the will which would indicate the testator did not intend the claim or debt to be satisfied by the legacy. Certainly a debt arising after the date of the will would not be merged in the legacy. (4 Wend., 443 ; Redf. on Surrogates, 578.) Mr. Barlow's will was made in 1872, and the last codicil republishing it in 1880 ; but we find on his books an express recognition of the balance carried down to December, 1886, and this is sufficient, we think, to show there was no intention to have the debt discharged by the gifts in the will.

The judgment must be reversed and a new trial ordered before another referee, with costs to abide the event.

BARRETT, J. :

I concur. There is, however, an additional consideration which strengthens the conclusion arrived at by Mr. Justice PATTERSON. The amount in Mr. Barlow's hands was not in the nature of an ordinary debt. It represented property belonging to Mrs. Barlow, originating partly in a gift to her from one of Mr. Barlow's clients and partly from her father. The property (or its proceeds) was held by Mr. Barlow throughout as his wife's trustee or agent, and he managed it for her from the time of its receipt until his death. It never became part of his estate, nor could he have deemed it such. It was always her separate estate, though in his hands for investment and reinvestment. Mr. Barlow could not well have looked upon this separate estate of his wife, thus intrusted to him for man-

agement, as part of his own estate, nor could he have taken it into consideration when he provided for Mrs. Barlow in his will and spoke of such provision as *made in lieu of her interest in his property and estate.* That clearly left her own property in his hands unaffected.

Judgment reversed and new trial ordered before another referee, with costs to abide event.