ors, supra, and Adams v. Town of Wheatfield, 46 App. Div. 466, 61 N. Y. Supp. 738, I add People ex rel. Smith v. Auditors, 5 Hun, 647, and Bell v. Webb, 4 App. Div. 614, 36 N. Y. Supp. 1122. Although, in our opinion, the return cannot present for review the audit of the board made subsequent to the issue and service of the writ (see authorities cited in the original opinion), yet we think that we may be informed by it as to the actual audit. The town board were required to certify and return all of their proceedings, decisions, and actions in the premises, etc., with their rulings, decisions, and actions, etc., and they have returned a reconsideration and an audit subsequent to the issue and service of the writ. These facts present the actual audit, which, as I have repeatedly said, cannot be reviewed upon this writ, and yet they are germane to show the actual proceedings of the board in full. See People ex rel. Gage v. Lohnas, 54 Hun, 604, 608, 8 N. Y. Supp. 104; Buckley v. Drake, 9 Civ. Proc. R. 336, affirmed 41 Hun, 384. In People ex rel. Miller v. Wurster, 149 N. Y. 554, 44 N. E. 299, the court, per Gray, J., say:

"The object of the writ of certiorari is that the court shall have certified and returned to it the proceedings of the body or officer to whom the writ is directed, in order that it may consider the same, and their regularity and legality, and thus be enabled to determine as to whether the complaint made by the relator in respect thereto is borne out."

I find in the return that the minutes of December 24th show that the relator appeared and stated to the board that some days "after he had begun certiorari" a member of the board informed him that, if he would discontinue, they would audit, and he said that would be satisfactory. Whereupon one of the board said that he had told the relator that his bill would be reconsidered, but could not tell him the amount in which it would be audited. "Mr. Weeks (i. e., the relator) then consented to present a corrected bill, and the board decided to consider it on December 28 at 3 p. m." In the Barnes Case, which the relator relies upon as "controlling," the court, on the motion for reargument, say:

"The relator also insists that, the bill having been once audited, the board had no right to reaudit and reject it. The answer to this is that the relator, by presenting this claim to the board at its subsequent meetings for audit, submitted his rights to it, and he cannot now successfully assert that the board was without power to re-examine and allow or disallow a claim which he submitted for its determination."

Writ dismissed on reargument, without costs. All concur.

---

## In re ARNTON.

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

1. WILLS—CONSTRUCTION—BEQUEST TO CREDITOR—ADEMPTION.

Where testator made a bequest to his creditor—the will reciting that it and others were made in an effort to repay those who had been kind to testator during his long illness—and the bequest was greater than the indebtedness, it did not amount to a satisfaction of the same.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 1698, 1700.]

2. EXECUTORS—COMPENSATION.

Under Code Civ. Proc. § 2730, providing that if there is more than one executor the commissions shall be apportioned among them according to the services rendered by them, respectively, where there were two executors, and their work, apart from formal acts, was performed by an accountant and attorneys, who were paid out of the estate, and the work of the executors consisted in obtaining the probate of the will, inventorying the estate, keeping the account, signing checks, etc., they were each entitled to half of the commissions.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 2127.]

3. SAME—SETTLEMENT OF TESTATOR'S ESTATE—ACCOUNTING OF EXECUTOR.

Where the employment of an accountant was suggested by testator in his will on an accounting by the executor, it was not error to allow an amount paid to an accountant employed by the executor.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 438.]

4. SAME—EMPLOYMENT OF ATTORNEY BY EXECUTOR.

On an accounting by an executor, it was not error to allow for services and expenses of an attorney retained by the executor, who rendered services before the accounting, and at the time thereof.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 448–462, 2259.]

5. SAME—SERVICES OF STENOGRAPHER.

On proceedings for the settlement of an executor's account, it was proper to allow compensation to a stenographer.

Appeal from Surrogate's Court, Franklin County.

Judicial proceedings on the settlement of the account of John J. Arnton as one of the executors of the will of Thomas S. Arnton, deceased. From a decree settling the account, Mary J. Arnton appeals. Modified and affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

A. K. Botsford (John P. Badger and John M. Cantwell, of counsel), for appellant.

Frederick W. Garvin, for respondent John J. Arnton.

CHASE, J. The testator and respondent were brothers, and formerly resided in Montreal, Canada. Some years ago they removed to New York, where they had rooms together. Each had an income from his father's estate, and respondent handled the money, paid the bills, and gave to the testator, from time to time, small amounts for his personal clothing and expenses. The testator kept the account between himself and the respondent. They lived together in that manner until May, 1899, when the testator was about to be married, after which they had no business dealings with each other. On the 14th day of June, 1899, the testator and appellant were married, and commenced housekeeping in a flat furnished by respondent and another as trustees of a fund therefor received from the estate of the testator's father. Thereafter respondent seldom saw the testator or the appellant, but he did go to see the testator in December, 1899, when the testator was very ill. The testator was a consumptive, and he moved with his wife to the village

of Saranac Lake. The respondent wrote to the testator, asking for an acknowledgment of the amount due him as shown by the account kept by the testator; but, although the letter was not answered, at different times when the respondent saw the testator he acknowledged the indebtedness to him. The respondent also wrote the testator at a time when the appellant was ill, and he received a reply from his brother, thanking him for his letter. On the 30th day of May, 1902, when the respondent was about to go abroad, he visited the testator, at Saranac Lake, and while there the testator said that he would like to have a talk with the respondent alone; and, when they were alone together, testator said that he knew the condition he was in, but was going to make a fight for his life, and then said to the respondent, "Jack, that matter that is standing between us—" Respondent said, "Tom, that is all right." Testator then said, "I have spoken to Tottie [appellant] about it, and it will be all right, or I will speak to Tottie about it." Respondent said, "That will be all right." There was not at that time or at any other time, so far as appears from the record, any express or implied agreement that the indebtedness from the testator to the respondent should be paid by a provision in the testator's will, or in any other particular way. The respondent returned from his trip abroad, and on the 18th day of September, 1902, visited his brother, at Saranac Lake, and on that day the testator drew his own will, and it was executed, and on the same day delivered to the respondent. Twenty-five days thereafter, and on October 13, 1902, testator died. By his will he appointed his brother, the respondent, his executor, and his wife, the appellant, the executrix. Testator, in his will, says:

"In making this will I consider I am doing my duty and trying to repay those who have been good and kind to me during my long and tedious illness."

Following such statement in the will he provided:

"I bequeath to my brother, John James Arnton, the sum of $6,000 and all the jewelry I own at the time of my death.

"To my sister, Edith Mary Bell, $2,000. To my sister, Margaret Ethel Arnton, $2,000. To my brother-in-law, Dr. James Bell, $2,000. To my mother-in-law, Mary Augusta Racey, $2,000. To my uncle William Gibson Arnton, $500."

The balance of his estate he gave to his wife. He did not have any children. His personal estate amounted to $31,784.30, and his real estate was valued at $13,600, all or substantially all of which came from a distribution of his father's estate. The executor and executrix probated the will, and proceeded with the administration of the estate, paid the debts that were presented, funeral expenses and expenses of administration, and legacies.

. The respondent then had prepared an account for a final judicial settlement of the estate, in which account he included a claim for cash due him, as per testator's cashbook, of $890.81, and full commissions as his compensation for services as executor. This account the appellant refused to sign, and the accounting proceeded on the petition of the respondent after citations were served upon the per-

sons interested under the will. The balance as stated in said account was due the respondent from the deceased at the time of his death, and it is shown by the cashbook so kept by the testator. The appellant claimed before the surrogate and claims in this court that the account should not be paid, for the reason that it is satisfied by the said legacy to the respondent.

The rule as stated in Williams v. Crary, 5 Cow. 368, that a legacy given by a debtor to his creditor which is equal to or greater than the debt shall be considered as a satisfaction of it has been repeatedly recognized. But dissatisfaction with this rule is frequently expressed, and slight circumstances have been eagerly seized upon to make an exception in its application. Redfield on the Law of Wills, vol. 184–194; American & English Ency. of Law (2d Ed.) vol. 18, p. 772; Williams v. Crary, supra; s. c., 4 Wend. 444; Mulheran's Executors v. Gillespie, 12 Wend. 349; Eaton v. Benton, 2 Hill, 576; Reynolds v. Robinson, 82 N. Y. 103, 37 Am. Rep. 555; Adams v. Olin, 61 Hun, 318, 16 N. Y. Supp. 132; Sheldon v. Sheldon, 133 N. Y. 1, 30 N. E. 730. The rule is a mere presumption, but, as a presumption, we do not understand that it has been abandoned; but in American & Eng. Ency. of Law (2d Ed.) vol. 18, p. 773, what is spoken of as the "modern rule" is stated as follows:

"That a legacy shall not be deemed a satisfaction of a pre-existing debt unless it appears to have been the intention of the testator that it should so operate. This so-called modern rule is based on the principal that prima facie whatever is given by a will is intended as a bounty, and not a payment. It is apprehended, however, that the only modern feature of the so-called modern rule is its expression since from the first the courts sought to ascertain the testator's intention and give effect to it."

In Sheldon v. Sheldon, supra, the court, referring to the facts in that case, say:

"The legacy given to the plaintiff by the will of the husband did not operate as a payment. The will contained no words from which any intent can be inferred or found to extinguish any pre-existing debt by means of the bequest. It was an absolute gift, apart from any debt due by the testator to his wife, and no debt is even mentioned or referred to in the will. A legacy to a creditor is not to be deemed in satisfaction of his debt unless so intended by the testator."

The rule and its exceptions are well stated in Story's Equity Jurisprudence (6th Ed.) vol. 2, § 1122, as follows:

"But, although the rule as to a legacy being an ademption of a debt is now well established in equity, yet it is deemed to have so little of a solid foundation, either in general reasoning or as a just interpretation of the intention of the testator, that slight circumstances have been laid hold of to escape from it and to create exceptions to it. The rule, therefore, is not allowed to prevail where the legacy is of less amount than the debt, even as a satisfaction pro tanto; nor where there is a difference in the times of payment of the debt and of the legacy; nor where they are of a different nature, as to the subject-matter or as to the interest therein; nor where a particular motive is assigned for the gift; nor where the debt is contracted subsequently to the will; nor where the legacy is contingent or uncertain; nor where there is an express direction in the will for the payment of debts; nor where the bequest is of a residue; nor where the debt is a negotiable security; nor where the legacy is given to the creditor's wife; nor where the debt is upon an open and running account."

The intention of the testator in this case in giving to the respondent and others legacies under his will is stated in the will itself. It was to repay those who had been good and kind to him during his long and tedious illness. Whether such goodness and kindness by the respondent consisted of acts, visits, or in the forbearance of the collection of the claim in question, is a matter of little consequence. The statement in the will, in testator's own language, negatives the suggestion that the bequest of $6,000 to the respondent was intended as a payment of a debt, the amount of which was well known to him, and which is but a small part of the amount of the legacy. It is said in Pomeroy's Equity Jurisprudence, vol. 1 (2d Ed.) § 533:

"Where the testator states in his will some particular motive or reason for making the gift, the legacy under these circumstances is not presumed to be a satisfaction of an existing debt unless the very motive or reason stated is that the debt should thereby be discharged."

We think the testator did not intend that the legacy to respondent should satisfy and discharge the indebtedness to him.

The decree provides for the payment of all of the commissions to the respondent. This was error. It is provided by the Code of Civil Procedure (section 2730) that, if there is more than one executor, the commissions shall be apportioned among them according to the services rendered by them, respectively. It appears from the record that the work of the executors, apart from formal acts, was performed by an accountant and attorneys, who have been liberally paid out of the estate therefor. The work of the executors consisted in obtaining the probate of the will, inventorying the estate, keeping the account, signing checks, paying claims, and other similar acts, in all of which the appellant took part. She shared in the responsibility of the office and in the work connected therewith, and is entitled to part of the commissions.

Objections are also made to an allowance made to a stenographer on the accounting, and for the amount paid to an accountant employed by the respondent, and to the amounts allowed to attorneys for their services and expenses before the accounting and on the accounting. It does not appear that the stenographer was the official stenographer of the surrogate's court. The employment of the accountant was suggested by the testator in his will, and we cannot say that the respondent was not entitled to an attorney of his own selection.

We think that the decree of the Surrogate's Court should be modified by providing that the commissions to the executors shall be divided equally between the appellant and respondent, and, as so modified, affirmed, without costs to either party. All concur.