In the Matter of the Petition of WILLIAM J. DANAHER, as Executor, etc., of EDWARD C. BALL, Also Known as E. BALL, Deceased.

ALICE J. GILLEN, Appellant; WILLIAM J. DANAHER, as Executor, etc., of EDWARD C. BALL, Deceased, and Others, Respondents.

Second Department, June 3, 1927.

Executors and administrators — claims against estate — non-negotiable promissory note reciting consideration — lack of consideration not shown.

The claimant has presented a claim against the estate of the testator based on a non-negotiable promissory note for $20,000, reciting "for value received," executed on April 9, 1923, and payable on or before sixty days after date. The contestants claim that the note was given without any consideration. The execution and delivery of the note were proven by uncontradicted evidence and the claimant relied upon the phrase "for value received" to establish consideration. The evidence by the contestants to show lack of consideration consisted of testimony by the housekeeper of the testator who testified that while the testator was ill, shortly before his death but prior to the time when the note was due, he asked the claimant for $1,000 which he said she owed him, and that this sum was paid to the testator. It cannot be said that the only inference to be drawn from that testimony is that the testator did not owe the claimant any money, especially in view of the fact that at the time the demand was made and the $1,000 paid, the note in question was not due, nor does such testimony establish that the note was a voluntary and unenforcible promise of an executory gift. The burden cast on the contestants to prove lack of consideration is not satisfied by the will itself. The will of the testator devised his house and contents, his jewelry, moneys on deposit in banks and all United

States and other bonds to the claimant, and directed that his debts should be paid out of property, real or personal, other than that devised to the claimant. There is nothing in the will to show that it was the intention of the testator that the devise to the claimant was to discharge the testator's liability on the note.

HAGARTY, J., dissents, with memorandum.

APPEAL by Alice J. Gillen from so much of a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 28th day of December, 1926, as disallowed the claim of Alice J. Gillen, formerly Alice J. Hunter, for $20,000, and which directed a distribution of a balance remaining in said estate of $38,226.46 in accordance with the provisions of the last will and testament of Edward C. Ball, deceased.

*Philip J. Britt* [*Stephen E. Ryan* with him on the brief], for the appellant.

*Charles J. McDermott* [*Charles O. Grim* with him on the brief], for the respondent William J. Danaher, as executor, etc.

*John J. Cunneen*, for the respondents William Ball and others.

*John F. Middlemiss*, for the respondents Abraham Ball and another.

KAPPER, J. The question to be decided on this appeal arises on a claim of Alice J. Gillen, formerly Alice J. Hunter, against the estate of Edward C. Ball, deceased, for the sum of $20,000 by virtue of an instrument executed by said deceased in the following form:

" $20,000.00          " ST. AUGUSTINE, FLA.— *April 9th*, 1923.

" On or before sixty days after date, I promise to pay to the order of Alice J. Hunter, Twenty thousand $20,000.00, for value received, negotiable and payable at St. Augustine, Florida or Brooklyn, N. Y.

" It is agreed by the parties hereto that the maker of this note can pay the same in United States Liberty Bonds, of the par value of twenty thousand ($20,000.00) Dollars.

" E. BALL      . [SEAL] "

George W. Jackson, county judge and attorney at law in St. Augustine, Fla., testified to the making of this note as follows: " Mr. Ball and Mrs. Hunter came to my office and Mr. Ball asked me if I would draft a promissory note for him, and upon agreeing to do so he requested that I draft a note for $20,000, payable to Mrs. Alice J. Hunter, or Alice Hunter, I do not remember

which. After I prepared this note I handed same to Mr. Ball and he read it over and executed same in my presence. After he signed this note he delivered it to Mrs. Hunter in my office. I well remember that he asked me what my fee was; upon telling him that there was no charge, he laughed and left the office and returned shortly with a ten dollar bill which he insisted that I accept. As I recall, he did not come into the office with the ten dollar bill but remained in an automobile outside and sent Mrs. Hunter in. At least Mrs. Hunter came in with the money and stated Mr. Ball sent it in and insisted that I accept it."

On this proof, plus the note, the claimant rested, the learned surrogate holding that the recital in the note " for value received " raised a presumption of consideration requiring the contestants to rebut the validity of the instrument by proof. That rebuttal was then undertaken.

Annie Flanagan, who had been the decedent's housekeeper for fifteen years and was with him and the claimant in Florida at the time of the making of the note and until the decedent's return on the 4th of May, 1923, testified that the decedent, on June 5, 1923, at his home in Brooklyn, and in the presence of the claimant, conversed with the witness and the claimant as follows: " I just went to the room and Mr. Ball — I went to Mr. Ball's room and as soon as I got through my work and the first thing Mr. Ball said to me, he said, ' Annie, I haven't got much ready cash in the bank. I don't know what I'm going to do.' I said, ' Goodness, Mr. Ball, don't worry about money, ready cash.' I said, ' The men in the store, Jake and John, will let you have some money,' and I said, ' I have got five cents in the bank I will let you have.' And he said, ' Thank you, Annie.' And I said, ' Yes,' and he turned to Mrs. Hunter and he said, ' You owe me a thousand dollars,' and this Mrs. Hunter said, ' Yes, yes, I will give you a check in the morning.' "

It is undisputed that the testator was quite ill either on or immediately after his return from Florida on May fourth, and that he remained so until his death on July 15, 1923. The witness Flanagan further testified to facts establishing that the claimant made out her check for $1,000 to the order of the testator, who indorsed it, and had the witness cash it.

Charles O. Grim, attorney for the executor, testified to a conversation with the claimant in his office on July 25, 1923, in the course of which she informed him of the provisions of the testator's will which she had learned from the testator, although not present at the execution of it, which was in the home of her mother in St. Augustine, Fla., where the testator was then staying.

At this point it is well to briefly state the contents of the will which appears tc have been executed on April 17, 1923. The *first* direction is for the payment of funeral expenses " and all just debts; " *second,* a devise of the testator's house and lot, his home, at 170 St. John's Place, Brooklyn, to " Alice J. Hunter, of 430 6th Street, Brooklyn," also all the contents and furnishing of testator's house to her, also all his jewelry, all moneys on deposit in banks, and " all United States Bonds and other bonds, owned by me at the time of my death," to which bequests and devise he added, " All devises and bequests made to Alice J. Hunter are to vest her with an absolute and fee simple title to everything willed to her; " *third,* a bequest " to Annie Flanagan, my faithful housekeeper," of the sum of $10,000; *fourth,* to his three business partners the sum of $5,000 each; *fifth,* to his " three cashiers in my business " the sum of $2,000 each; and *sixth,* " All of the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever situated, I will, give, devise and bequeath to my brothers John Ball, George Ball, Abraham Ball, William Ball and my sister Annie Murty or to use her proper name Mary Ann Murty, share and share alike to have and to hold absolutely and forever." The will, after naming the executor, closes with the following provision: " I will and direct that my debts shall be paid by my Executor out of property real or personal other than the real estate and personal property covered by article Two (2) of this my Will " (which I think it important to note is the devise and bequests made to Alice J. Hunter).

In connection with the will the contestants place reliance upon the fact that amongst the assets of the estate were thirty Liberty bonds of the face value of $1,000 each, and which were duly paid over to the claimant as directed by the will. Recurring to the testimony of Mr. Grim, he further testified that in the conversation with the claimant, " she stated to me that it was Mr. Ball's affection for her and that she knew of no reason why he should have made me, Mrs. Hunter, a stranger to his blood, his beneficiary under his will." It was Mr. Grim's further testimony that during this talk with the claimant she made no mention of " this promissory note; " but he later corrected this by saying that his memory had been refreshed and that he recalled that on July 25, 1923, when Mrs. Gillen (claimant) called on him " she exhibited to me the promissory note in question," and further, that he had called in his stenographer and had a copy of the note made.

There is no evidence of a material character, other than that already referred to, in support of the contestants' position; and the question of law is presented whether the presumption arising

from the making and execution of the note with its recitals has, been overcome by the testimony given by Annie Flanagan and a consideration of the will, for the only other witness, Mr. Grim, has not testified to anything in refutation of the presumption.

In considering this case, I shall regard the note as a non-negotiable instrument because it purports to be restricted in the kind of payment to be made, namely, bonds in lieu of money. But that, neither adds to nor takes from the legal propositions involved. The law is that where a non-negotiable note contains the recital " value received," or " for value received," such a recital " constitutes an admission that the instrument was issued for a sufficient, consideration." (*Owens* v. *Blackburn, No. 1*, 161 App. Div. 827, 829.) " It is not necessary to determine whether this instrument, is technically a promissory note. It states on its face that it was; given ' for value received,' and in the absence of evidence to the contrary, this is a sufficient acknowledgment or proof of consideration." (*Hamilton* v. *Hamilton*, 127 App. Div. 871, 874.) In *Durland* v. *Durland* (153 N. Y. 67) there was tried out a claim by the testator's widow against his estate upon an apparently non-negotiable instrument which recited consideration. It appeared. at the hearing that an effort was made to prove consideration. beyond that appearing on the face of the instrument. It was said (p. 74): " Moreover, that the paper, which is the basis of this; claim, is a promissory note and must be treated as such, there; can be no doubt. A good consideration is not only stated on the face of the note, but the presumption is that it is a valid obligation based upon a good and legal consideration, and the burden of showing that there was a want of consideration rested upon the defendant. The appellant, while admitting this presumption, contends that because the respondent introduced evidence to show an actual consideration, therefore she cannot avail herself of the presumption which the law affords. With this contention we do not agree. We think it cannot be properly held that the plaintiff, by giving evidence showing an actual consideration, thereby waived the right to avail herself of the presumption which the law affords or that it relieved the defendant from the burden of proving his defense."

The respondents do not question the soundness of this rule of presumption of consideration arising from the face of the instrument; nor do they contend that it was not incumbent upon them to overcome the presumption; but they claim that the testimony of Annie Flanagan shows that when the testator said to the claimant that she owed him $1,000, followed by the claimant's making out a check for that amount to the order of the testator, it was evidence

enough to establish that the testator was not indebted to her on this note, and that the note was, therefore, the testator's " voluntary and unenforcible promise of an executory gift." (*Dougherty* v. *Salt*, 227 N. Y. 200, 202.) If such is the inference to be drawn from Miss Flanagan's testimony, then the surrogate's disallowance of this claim was correct. Is the inference, however, the only permissible one? Is it not equally as fair an inference to say that at a time antedating the maturity of the note this statement of the testator to the claimant of her debt to him showed business or financial dealings between them prior to this time, and that the relations of debtor and creditor existed on more than one transaction? There is also an inference, somewhat remote perhaps, but still inferable, that with this very sick man, the giving of this $1,000 by the claimant to the testator was an acquiescence in his need of ready money despite the use of the words by him, " You owe me." At any rate, it would not be fair to say that the only legitimate inference permissible from the $1,000 transaction was one that repudiated the relation of debtor and creditor arising from the note in suit. If that be so, then those contesting this claim have failed to overcome the presumption by that testimony.

The authority of *Dougherty* v. *Salt* (*supra*) is urged as controlling. There, an eight-year-old boy received from his aunt, the defendant's testatrix, a promissory note for $3,000 payable at her death or before. How the note came to be given was explained by the boy's guardian as a witness in his ward's behalf. He testified to a visit of the aunt who, when she saw the boy, made complimentary allusions to his good looks, and appeared to be pleased to learn of his school progress, after which she said that she loved the boy very much and did not intend to talk about it but intended to take care of him then, whereupon the note was made out, signed and handed by her to the boy with the caution not to lose it and that " Some day it will be valuable." It was by reason of this testimony given in behalf of the boy that the Court of Appeals (per CARDOZO, J., p. 202) said: " The inference of consideration to be drawn from the form of the note has been so overcome and rebutted as to leave no question for a jury. This is not a case where witnesses summoned by the defendant and friendly to the defendant's cause, supply the testimony in disproof of value (*Strickland* v. *Henry*, 175 N. Y. 372). This is a case where the testimony in disproof of value comes from the plaintiff's own witness, speaking at the plaintiff's instance. The transaction thus revealed admits of one interpretation, and one only. The note was the voluntary and unenforcible promise of an executory gift (*Harris* v. *Clark*, 3 N. Y. 93; *Holmes* v. *Roper*, 141 N. Y. 64, 66). This child of eight was not a creditor, nor

dealt with as one. The aunt was not paying a debt. She was conferring a bounty (*Fink* v. *Cox*, 18 Johns. 145). The promise was neither offered nor accepted with any other purpose."

And for similar reasons was rested the decision in *Blanshan* v. *Russell* (32 App. Div. 103, 105), where it was said: " It is true that the recital ' for value received ' in a note imports a consideration, and the burden is upon the defendant to overcome the presumption arising therefrom. But if the plaintiff, upon the trial, proves that the note was made and delivered for a consideration that the law does not recognize as sufficient to sustain the promise, the burden which rested upon defendant has been met by the evidence in the case quite as effectively as if it had been introduced by the defendant himself. In the case before us the evidence introduced by the plaintiff to show a consideration, and particularly the statement of the maker of the note that he gave it as a reward for what Mrs. Bruyn had done for him, very clearly forbids any speculation by the jury that the ' value received ' was other than was so shown."

It may properly be said, therefore, that in cases of the class now under consideration, the question relates to the quality and sufficiency of the proof to overcome a presumption created by law, and if such proof be forthcoming the presumption may be destroyed, otherwise not.

The next prop of the contestants is the will itself; and it is urged that as the testator appears to have made a liberal devise and bequest to the claimant, including the gift to her of " all United States Bonds and other bonds, owned by me at the time of my death," this was evidence of his intention to regard the note as a mere unenforcible promise. I do not think that the will can be utilized for any purpose other than that of which it speaks on its face. Nowhere in this will can I find any promise on the part of the testator to hold and possess at his death any particular number of bonds or any bonds at all. The time when the will took effect, the date of the testator's death, was subsequent to the due day of the note. Even a bequest to a creditor of a value equal to or greater than the debt is not regarded as a discharge of the debt unless it is apparent on the face of the will itself that such discharge was intended. As was said in *Sheldon* v. *Sheldon* (133 N. Y. 1, 4): " The legacy given to the plaintiff by the will of the husband did not operate as payment. The will contains no words from which any intent can be inferred or found to extinguish any preexisting debt by means of the bequest. It was an absolute gift apart from any debt due by the testator to his wife, and no debt is even mentioned or referred to in the will. A legacy to a

creditor is not to be deemed in satisfaction of his debt, unless so intended by the testator."

" A legacy implies a bounty and not a payment " (*Reynolds* v. *Robinson*, 82 N. Y. 103, 107); and when made " to a creditor is not to be deemed in satisfaction of his claim unless so intended by the testator " (*Boughton* v. *Flint*, 74 N. Y. 476, 482; *Matter of Dailey*, 43 Misc. 552, 558); and where there is a direction in the will *for the payment of debts* such a direction negatives any intention that the testator was paying a debt by giving a legacy to his creditor. (*Boughton* v. *Flint, supra; Matter of Arnton*, 106 App. Div. 326, 330; *Fort* v. *Gooding*, 9 Barb. 371.)

A very strongly expressed design of the testator seems to me to be found in the closing clause of his will, above quoted, in which he particularly impressed the obligation to satisfy his debts out of his estate other than the property devised to the claimant. If this will is to be listened to as speaking other than as it reads, I am at a loss to see, if the testator did not intend the claimant to be paid the note which he made to her order, why he did not use suitable expressions to that end, particularly when we consider that the note was made on April 9, 1923, and that the decedent executed his will on April seventeenth thereafter. What he said and did in the office of Judge Jackson in Florida indicates nothing from which could be inferred that there was no indebtedness. Nothing in the proofs adduced on behalf of the contestants overcame, in my opinion, the presumption that the note was based upon a valuable consideration.

It may be said in passing that the estate of the testator amounted to approximately $185,000, and that the brothers and sister named in the will as the residuary legatees are the only next of kin.

I think the surrogate's decree, in so far as appealed from, should be reversed upon the law and the facts, with costs to the appellant payable out of the estate, and that the claim of the claimant should be allowed, and that the proceedings should be remitted to the Surrogate's Court of Kings county to proceed in accordance herewith.

KELLY, P. J., YOUNG and LAZANSKY, JJ., concur; HAGARTY, J., dissents, with the following memorandum: The claimant and the decedent were sojourning at the home of the claimant's mother, in St. Augustine, Fla., at the time the note and the will were made. The will was made eight days after the note. It is apparent to me that the decedent was attempting to make financial provision for the claimant. In my opinion the will, in the scheme of arrangements, superseded the note, and very little evidence was required

to overcome the presumption that value was received, as recited in the note.    Indebtedness upon the part of claimant to the decedent is inconsistent, under the circumstances of this case, with the claim she now makes under the note.    The decree of the Surrogate's Court should be affirmed.

Decree of the Surrogate's Court of Kings county, in so far as appealed from, reversed upon the law and the facts, with costs to appellant payable out of the estate, appellant's claim allowed, and proceeding remitted to the Surrogate's Court to proceed in accordance herewith.